UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

RONALD RICHARD SMITH,  )
             Plaintiff,  )
             vs.  )    No. 2:17-cv-00107-WTL-DLP
LT. BAKER,  )
LT. TUSCY,  )
             Defendants.  )

**Entry Granting Defendants' Motion for Summary Judgment on Exhaustion
and Directing Entry of Final Judgment**

**I. Background**

Plaintiff Ronald Richard Smith is a federal prisoner currently confined at the Federal Correctional Institution in Fairton, New Jersey. Mr. Smith filed his complaint on March 3, 2017, in the Northern District of West Virginia and it was then transferred to this district.

Mr. Smith was formerly incarcerated at the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute"). His claims are brought pursuant to the theory recognized in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). He alleges that in January 2016, when he was incarcerated at the USP Terre Haute, he was discriminated against for being a Black Muslim. More specifically, he alleges that Lt. Baker and Lt. Tuscy violated his religious freedom by taking away his Friday Jummah Prayer in violation of the First Amendment to the United States Constitution. He also alleges that these defendants violated his rights under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq*. ("RFRA").

Defendants Lt. Baker and Lt. Tuscy filed a motion for summary judgment seeking resolution of the claims against them on the basis that Mr. Smith failed to exhaust his available

administrative remedies. Mr. Smith opposed the motion for summary judgment and the defendants replied. For the reasons explained in this Entry, the defendants' motion for summary judgment, Dkt. No. 40, is **granted.**

## II. Discussion

### A. *Legal Standards*

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.*, 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson*, 477 U.S. at 248). The substantive law applicable to the motion for summary judgment is the Prison Litigation Reform Act ("PLRA'"), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004).

It is the defendants' burden to establish that the administrative process was available to Mr. Smith. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

**B.** *Undisputed Facts*

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(c), the following facts, construed in the manner most favorable to Mr. Smith as the non-movant, are undisputed for purposes of the motion for summary judgment:

Mr. Smith was incarcerated at USP Terre Haute from March 30, 2015, through April 11, 2016. He was subsequently incarcerated at the United States Penitentiary-Hazelton ("USP Hazelton") in West Virginia from April 15, 2016, until April 3, 2017.

**Administrative Remedy System**

The Bureau of Prisons ("BOP") has promulgated an administrative remedy system that appears at 28 C.F.R. §§ 542.10, *et seq.*, and BOP Program Statement 1330.18, Administrative Remedy Procedures for Inmates ("P.S. 1330.18"). Dkt. No. 40-1 (Schalburg Decl.), ¶ 4. *See* BOP Program Statement 1330.18 at http://www.bop.gov/policy/progstat/1330_018.pdf. This administrative remedy system was in effect at USP Terre Haute during the entire time that Mr. Smith was housed there. All BOP Program Statements are available for inmate access via their respective institution law library.

The BOP administrative remedy process is a method by which an inmate may seek review of a complaint related to any aspect of his imprisonment. 28 C.F.R. § 542.10. To exhaust his remedies, an inmate must typically first file an informal remedy request through an appropriate institution staff member via a BP-8 prior to filing formal administrative remedy requests with the Warden, Regional Director, and General Counsel. 28 C.F.R. § 542.13; P.S. 1330.18 at 4.

If the inmate is not satisfied with the response to his informal remedy, BP-8, he is required to first address his complaint with the Warden via a BP-9. 28 C.F.R. § 542.14; P.S. 1330.18 at 4. Next, if the inmate is dissatisfied with the Warden's response, he may appeal to the Regional Director via a BP-10. 28 C.F.R. § 542.15; P.S. 1330.18 at 6-7. Finally, if he is dissatisfied with the Regional Director's response, then the inmate may appeal to the General

Counsel via a BP-11. 28 C.F.R. § 542.15; P.S. 1330.18 at 7.[1] An inmate who has filed administrative remedies at all required levels and who has received a response to his appeal from the General Counsel is deemed to have exhausted his administrative remedies as to the specific issue, or issues, properly raised therein. *See* 28 C.F.R. § 542.15 ("Appeal to the General Counsel is the final administrative appeal."). Following exhaustion at all three administrative levels, the inmate may file a civil action in the proper United States District Court with respect to the issues properly addressed and exhausted at the administrative level. 42 U.S.C. § 1997e(a).

## Mr. Smith's Administrative Remedies

In 2016, Mr. Smith submitted seven administrative remedies relating to three separate remedy case numbers—Remedy Case No. 854311, Remedy Case No. 855712, and Remedy Case No. 866931. Dkt. No. 40-1, ¶ 9; Dkt. No. 40-4 at 32-35.

**1. Remedy Case No. 854311**

On January 14, 2016, Lt. Baker issued Incident Report No. 2804443 to Mr. Smith for assaulting another person without serious injury, in violation of Code 224, after Mr. Smith's cellmate was found with a possible broken jaw. Dkt. No. 40-4, ¶ 10; Dkt. No. 40-5 at 11; *see also* Dkt. No. 1-8. Mr. Smith appeared before a Discipline Hearing Officer ("DHO") on February 18, 2016. The DHO found, based on the greater weight of the evidence, that Mr. Smith had violated Code 224. Dkt. No. 40-1, ¶ 10; Dkt. No. 40-5 at 5-9.

On March 7, 2016, Mr. Smith submitted Remedy No. 854311-R1 to the Regional Office, appealing his DHO conviction. Dkt. No. 40-1, ¶ 11; Dkt. No. 40-5 at 2; Dkt. No. 1-6 at 1. The Regional Director responded to Mr. Smith's remedy on May 5, 2016, informing him that a

---

[1] BP-9s are identified in the SENTRY computer database as "F1"s. BP-10s are identified as "R1"s and BP-11s are identified as "A1"s.

procedural error was discovered and that Incident Report No. 2804443 was being returned to the DHO for reconsideration. Dkt. No. 40-1, ¶ 11; Dkt. No. 40-5.

**2. Remedy Case No. 855712**

On March 14, 2016, the Regional Office received a BP-10, alleging "staff misconduct," from Mr. Smith. Dkt. No. 40-1, ¶ 12; Dkt. No. 40-4 at 32. This remedy was assigned Remedy No. 855712-R1, but was rejected by the Regional Office, in part because it was not submitted on the proper BP-10 form. Dkt. No. 40-1, ¶ 12; Dkt. No. 40-4 at 32. No further submissions were received for this remedy. Dkt. No. 40-1, ¶ 12; Dkt. No. 40-4.

**3. Remedy Case No. 866931**

On June 6, 2016, while Mr. Smith was incarcerated at USP Hazelton, Mr. Smith submitted a BP-8, which alleged:

> Lt. Tussey/Lt. Baker at USP Terre Haute violated 18 U.S.C. §§ 1001, 1002(a)(2)(3) fraud/false statements on a federal document (Incident Report No. 2804443, USP-TH) on racial/religious profiling 1st Amend.

Dkt. No. 40-6 at 7; Dkt. No. 1-2.

The relief requested in this remedy was:

> Back pay of $200.00, administrative single cell with $18,000.00 for racial and religious profiling and for false filing of federal documents by B.O.P. staff. NO RETALIATION.

*Id.*

The response to the informal remedy was "unable to address issue referred. Tort claim needs filed to Region." *Id.*

On June 21, 2016, Mr. Smith submitted a BP-9, assigned Remedy No. 866931-F1, to the Hazelton Complex Warden. Dkt. No. 40-1, ¶ 13; Dkt. No. 40-6 at 6; Dkt. No. 1-3 at 1. In this remedy, Mr. Smith alleged that:

> The response to my BP-8 is a tactic to avoid my civil and constitutional rights that was violated by B.O.P. staff member [sic] on racial and religious profiling, where they committed unlawful acts of fraud/false statements on a federal document in violation of 18 U.S.C. §§ 1001, 1002(a)(2)(3) with 1st, 5th Amend. Lt. Tuscy/Lt. Baker at USP Terre Haute willfully and knowingly wrote false statement on federal document to get me prosecuted/DHO sanction because of my race/religious [sic]. But [sic] law I can request relief like: $200.00 for back pay, an administrative single cell, and $18,000.00 for the prejudice acts by staff as a part of administrative remedy relief where a tort claim is file [sic] later."

Dkt. No. 40-6 at 6; Dkt. No. 1-3 at 1.

The Hazelton Complex Warden responded to Mr. Smith's BP-9 on June 27, 2016. Dkt. No. 40-1, ¶ 13; Dkt. No. 40-6 at 5; Dkt. No. 1-3 at 2. Mr. Smith then submitted a BP-10 to the Mid-Atlantic Regional Office, which was received on July 20, 2016. Dkt. No. 40-1, ¶ 13; Dkt. No. 40-6 at 4; Dkt. No. 1-4 at 1. In this remedy, which was assigned Remedy No. 866931-R1, Mr. Smith stated:

> Joe Coakley – Complex Warden and R. Thorn – Adm Remedy Coordinator both avoided to address the grievance on my civil and constitutional rights being violated by the B.O.P. staff members who committed racial and religious hate crime by profiling me on my race and religious belief with their unlawful acts of fraud/false statements on federal document violating law: 18 U.S.C. §§ 1001, 1002(a)(2)(3) / 1st, 5th Amend. U.S. Const. Lt. Tussey/Lt. Baker USP Terre Haute willfully and knowingly put false statements on a federal document to get me prosecuted with DHO sanctions because of my race and religious belief. My relief request is an administrative single cell (back pay and $18,000.00 all on attached to tort claim for money damages).

Dkt. No. 40-6 at 4; Dkt. No. 1-4 at 1.

The Regional Office responded to Mr. Smith's BP-10 on August 3, 2016, noting his allegations of unprofessional conduct by "a staff member [who] falsified documents to get you prosecuted." Dkt. No. 40-1, ¶ 13; Dkt. No. 40-6 at 3; Dkt. No. 1-4 at 2. The response explained that Program Statement 3420.11 "requires that employees conduct themselves in a manner that will not be demeaning to inmates, fellow employees, or others," and that it "prohibits staff from

falsifying any record." *Id.* It also stated that "[b]ased on your allegations, appropriate administrative procedures have been taken." *Id.*

On August 22, 2016, the Central Office received a BP-11 from Mr. Smith, which was assigned Remedy No. 866931-A1. Dkt. No. 40-1, ¶ 13; Dkt. No. 40-6 at 2; Dkt. No. 1-5 at 1. In it, Mr. Smith stated:

> Regional Director, Warden, and the administrative remedy coordinator (J.F. Caraway, J. Coakley, R. Thorn) all are conspirators with Lt. Tussey and Lt. Baker to commit a hate crime on racial and religious profiling acts by trying to protect other B.O.P. staff who did unlawful acts by committing Fraud/False statements on Federal Documents that violates laws: 18 USC § 1001-1002(a)(2)(3)/1st, 5th, Amend. U.S. Const. I recently have been threatened by B.O.P. staff to withdraw this complaint or they will re-instate an incident report. My relief requests: Admin. single cell and an agreement to my terms on Tort Claim.

Dkt. No. 40-6 at 2; Dkt. No. 1-5 at 1.

The Central Office responded to Mr. Smith's BP-11 on December 19, 2016. Dkt. No. 40-1, ¶ 13; Dkt. No. 40-6 at 1; Dkt. No. 1-5 at 2. The response informed Mr. Smith that the allegations of staff misconduct had been referred to the appropriate BOP office for further review. *Id.* His request for compensation was denied because the Administrative Remedy Program does not provide such relief. *Id.*

### C. *Analysis*

Remedy No. 866931 is the only remedy at issue. The parties do not dispute that Mr. Smith completed all of the required administrative steps in relation to Remedy No. 866931. Mr. Smith contends that Remedy 866931 exhausted his claims in this action. The defendants argue that this Remedy did not put them on notice of the claims that were alleged in this lawsuit.

Mr. Smith argues that his placement in the SHU after the disciplinary charge resulted in a loss of his religious liberties. He concedes that his allegations of Friday Jummah prayer, religious liberties, and anti-Muslim comments were "not precisely mention [sic] in all my administrative

remedies." Dkt. No. 44 at 5. He argues that "it's clear that Mr. Smith obeyed the mandatory administrative remedy process an [sic] alerted the prison of his religious freedom being violated under the First Amend. And RFRA." *Id*. at 6. This case turns, then, on a comparison of the claims brought in this action and the content of Remedy No. 866931.

"The exhaustion requirement's primary purpose is to alert [ ] the state to the problem and invit[e] corrective action." *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (internal quotation omitted). "When the administrative rulebook is silent [concerning the required content of a grievance], a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

While Mr. Smith did allege in Remedy No. 866931 that the defendants had violated his First Amendment rights by racial and religious profiling, his entire focus was on an alleged false incident report which caused him to be charged and found guilty of assault. In his BP-8, he alleged, in part, violations of certain statutes by "fraud/false statements on federal document (Incident Report)…." Dkt. No. 40-6 at 7. In his BP-9, he alleged, in part, that Lt. Tuscy and Lt. Baker "willfully and knowingly wrote false statement on federal document to get me prosecuted/DHO sanction because of my race/religious…." Dkt. No. 40-6 at 6. In his BP-10, he alleged, in part, that BOP staff members "committed racial and religious hate crime by profiling me on my race and religious belief with their unlawful acts of fraud/false statements on federal document violating law …." Dkt. No. 40-6 at 4. Similarly, his BP-11 alleged, in substantial part, that others conspired with "Lt. Tussey and Lt. Baker to commit a hate crime on racial and religious profiling acts by trying to protect other B.O.P. staff who did unlawful acts by committing Fraud/False statements on Federal Documents that violates laws." Dkt. No. 40-6 at 2.

The BOP's responses to Mr. Smith's remedies confirm what issues were raised. In particular, Regional Director Caraway's response to the BP-10 stated that the claim was "a staff member falsified documents to get you prosecuted." Dkt. No. 40-6 at 3. Mr. Caraway explained that the Standards of Employee Conduct prohibit "staff from falsifying any record." *Id.* As a result of the remedy, "appropriate administrative procedures have been taken." *Id.*

The mere mention of the First Amendment or hate crimes or religious profiling does not put prison officials on notice of all possible types of religious discrimination. At no level of Remedy No. 866931 was there any mention of the loss of the opportunity to engage in Friday prayer. If the allegations concerning Friday prayer had been recited in Mr. Smith's administrative remedies, the response would likely have been very different than the response to his allegations about false documents. An investigation into false documents would not and did not lead to any investigation of whether Friday prayer practices had been denied.

The statutory objective of the exhaustion requirement "give[s] the prison administration an opportunity to fix the problem—or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison's solution does not fully satisfy the prisoner." *Pozo*, 286 F.3d at 1023. Here, Mr. Smith did not give prison officials that opportunity. The facts alleged in Mr. Smith's remedies did not satisfy the essential purpose of putting prison officials on notice of his claims of denial of religious liberties, including Friday Jummah prayer.

The consequence of Mr. Smith's failure to exhaust his administrative remedies, in light of 42 U.S.C. § 1997e(a), is that this action must be dismissed without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (Holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

### III. Conclusion

There is no genuine material question of fact as to whether Mr. Smith properly completed the exhaustion process before filing his claims in this action. For the above reasons, the defendant's motion for summary judgment, Dkt. No. 40, is **granted.**

Mr. Smith's motion for reconsideration, Dkt. No. 49, and motion for status of motion to reconsider, Dkt. No. 51, are **denied as moot.**

Final judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

*William T. Lawrence* (signature)

Date: 3/27/18

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

RONALD RICHARD SMITH, #02733-050
FCI Fairton
Inmate Mail/Parcels
P.O. BOX 420
Fairton, NJ  08320

Electronically registered counsel